NEW-YORK, Nov. 1806.

Jackson v. Winslow.

Jackson, *ex dem.* Miller and others, *against* Winslow.

A soldier in the New-York line of the American army became entitled to land, and died in 1778, without issue. Letters patent were issued in 1798, for the land in his name. His father died in 1803, leaving 5 sons and 3 daughters. The eldest brother sold, and conveyed the land in 1801, to H. In an action of ejectment brought to recover the possession of the land, by H, who claimed under the deed of the eldest brother, against W. who held under a person who was in actual possession of the land when the deed to H was given, it was held that the deed from the elder brother was void, and that the land became vested in the father on the death of the patentee, by the 8th sect. of the act of the 5th of April, 1802.

THIS was an action of *ejectment*, to recover part of lot No. 57, in the town of *Scipio*, in the county of *Cayuga.* The cause was tried at the *Cayuga* circuit, before Mr. Justice *Livingston*, on the 9th of *June*, 1806.

The plaintiff produced, and read in evidence an exemplification of the letters patent, for the land in question, dated the 13th of *September*, 1798, to *David Miller*, who was a soldier, serving in the *New-York* line of the American army, during the war with *Great Britain*, and died in 1778. *Peter Miller*, one of the lessors of the plaintiff, was the eldest brother of *David Miller*. The plaintiff then offered in evidence of a deed, dated the 24th of *October*, 1801, from *Peter Miller* to *Philip Hoaghtiling*, and another deed from *Hoaghtiling* to *James Knapp*, for one third part of the premises in question. The reading of these deeds was objected to on the part of the defendant, who offered in evidence, a deed of the premises, from *Zacharia Tomlinson* to *Walter Wood*, dated the 2d of *December*, 1796, and another deed from *Walter Wood* to *Albert Crouse*, dated 29th *October*, 1796, a deed from *Crouse* to *Elias Avery*, dated the 26th *July*, 1803, and a deed from *Avery* to the defendant in possession, for the consideration of $2985, dated the 22d *November*, 1804; all which deeds were duly acknowledged and recorded. The defendant further offered to prove, that he was in the actual possession of the land in question, at the time of the date of the deed from *Philip Hoaghtiling* to *James Knapp*, and that *Philip Miller*, the father of *David Miller*, died the 5th of *April*, 1803, leaving issue, five sons, the said *Peter Miller*, and *John, Samuel Philip*, and *Nicholas*, and three daughters who were married. It was contended, on the part of the plaintiff, that the fee of the land, on the 24th of *October*, 1801, at the date of the deed from *Peter Miller* to *Philip Hoaghtiling* was vested in the people of the state of *New-York*, and that *Crouse*, and those under whom he claim-

ed, could not have held possession of the land long enough to have it considered as adverse to the title of the people.—This objection, as well as the deeds offered on the part of the defendant, were overruled by the judge, and the deeds offered on the part of the plaintiff were read in evidence. It was also proved, that *Philip Hoaghtiling* had died since the execution of the deed, leaving issue, the other lessors of the plaintiff. A verdict was, thereupon found for the plaintiff.

A motion was made to set aside the verdict, and the same was submitted to the court, without argument, on a case containing the facts above stated.

SPENCER J. *David Miller*, the original grantee of the lands in question, was a soldier, serving in the line of this state, in the army of the *United States*, in the late war with *Great Britain*, and died previous to the 27th of *March*, 1783; and by the 1st section of the act of the 5th of *April*, 1803 * the title vested in him at the time of his death. His father, *Philip Miller*, who died since the passing of that act, would take as his heir,† unless there was some person holding as a *bona fide* purchaser, under his eldest brother, *Peter Miller*.‡ If such be not the case, then, as it appears that there are seven other persons who were the issue of *Philip Miller*, and co-heirs with *Peter Miller*, not made lessors, the plantiffs will not be entitled to take possession of more than one-eighth part of the lands, for which the action is brought. If there was a person who held as a *bona fide* purchaser in this case, it must be *Philip Hoaghtiling*, to whom, as the case states, *Peter Miller* gave a deed, and I presume, for the premises in question

[*] I confess that I cannot well understand the plaintiff's counsel, in supposing that, in 1801, the title to this land was vested in the state. The act of 1803, whether considered as a declaratory act or not, absolutely vests the title in *David Miller* at the time of his death. Whether it before vested or not, I am not to enquire; the legislature had plenary power to so vest it; and in the case of Jackson

NEW-YORK, Nov 1806.

Jackson v. Winslow.

* *L. N. Y. v.* 3. *p.* 401.

† *L. N. Y. v.* 1. *p.* 46.

‡ *Sec.* 8. *v.* 3. *p.* 399, *Laws.*

[ * 82 ]

NEW-YORK,
Nov. 1806.

Jackson
v.
Winslow.

*3 Caines 67.
‡ 2 Caine,
183,

ex dem. *Sherwood* v. *Phelps*,* the court considered the act as relating back to the time of issuing the patent. The conveyance by *Peter Miller*, the elder brother of *David*, had it been valid, would have changed the rule of descent, but I am constrained to say it was void. The case of *Jackson ex dem. Dunbar* and *Thorn* v. *Tod*,‡ is very analogous to the present. There, a conveyance having been made by *Platt*, the real owner, to *Thorn*, it was held to be void, in consequence of a possession, at the time, under an adverse title. It is true, I did not agree in the opinion delivered; but my dissent was not founded on any different view of the law, but of the facts constituting the adverse possession. I supposed *Todd's* relation to *Isaacs* was not made out. Here, *Crouse* was in possession of the land, under a purchase, and claiming title, when *Peter Miller* gave the deed to *Hoaghtling*; which is, therefore void. If this deed was void, then there was no person holding as a *bona fide* purchaser under the elder brother, for a void deed is as none.

It then follows necessarily, that the third rule of descent, prescribed by the statute of the 23d of February, 1786, applies, and the father of *David* took as his heir. He having died since 1803, and *Peter Miller* being one of the eight persons entitled upon his death, and the others not having been made lessors, he can only have judgment for one undivided eighth part of the premises.

TOMKINS, J. LIVINGSTON, J. and THOMPSON, J. concurred.

[ *83 ]      KENT, Ch. J. I cannot concur in the opinion just delivered. By the act of the 5th of *April*, 1803, the letters patent of the 13th of *April*, 1790, were made to relate back to the life of the grantee, and the titles declared to have vested at the time of his death. The act was made to reach precisely such a case as that of *David Miller*, the patentee. (*Jackson ex dem. Sherwood* v. *Phelps*, 3 Caines, 68, 69.) We are therefore to consider the case in relation to the title, as if *Miller* had been alive, when the

letters patent issued, or rather as if they had been issued before his death, in 1778; and then the lessors of .the plaintiff are to be considered as his legal representatives. *Philip Hoaghtiling.* is to be considered as a *bona fide* purchaser under *Peter Miller*, the heir at law under the patentee; for I do not think that the adverse possession set up by the defendant could effect that purchase, within the purview of the 8th section of the act of *April*, 1803.* The word *held*, in that section, is not to receive a technical meaning, because, no individual could have then held the land, in judgment of law, since the fee was in the state, until that act passed. · I do not perceive that the decision in *Sherwood* and *Phelps* is repugnant to this opinion. It is therefore sufficient to have been a *bona .fide claimant*, as purchaser, or devisee under the heir at law, and such *Hoaghtiling* undoubtedly was. This case then I consider, as not within the operation of that section, and there is no ground for the suggestion that the state was ousted of its right to convey or release the premises, when the act of 1803 passed. The idea is wholly inadmissible. There may be an intrusion on the lands of the state, but the state cannot be disseised, and its grant is good, notwithstanding the possession of the intruder. · (*Bacon tit. Prerogative, E.* 6. 1 *Rol. Abr.* 659. *No.* 10.) I am of opinion, that the motion ought to be denied.

Judgment for the plaintiff, *ut supra.*