Fore v. Hoke.

BENJAMIN FORE *et al.*, Defendants in Error, v. MARY E. HOKE *et al.*, Plaintiffs in Error.

St. Louis Court of Appeals, February 16, 1892.

1. **Eminent Domain**: JURISDICTION. Statutes providing for summary proceedings for the condemnation of private property are strictly construed; and the steps thereby required to be taken are conditions precedent to the right of condemnation. It must affirmatively appear on the face of the proceedings that these steps have been taken; otherwise the judgment of condemnation will be void. This rule applies as well when the proceedings are commenced in the circuit court, as when they are commenced before an inferior court possessing a special or limited jurisdiction.

2. —— : ——. Accordingly, such judgment of condemnation is void, if the record fails to show affirmatively that the commissioners appointed to assess damages were freeholders, resident of the county, as required by the statute, but merely showed that the commissioners were householders, resident in the county.

3. —— : —— : ENLARGEMENT OF PUBLIC CEMETERY. The statute governing the condemnation of private property for the enlargement of a public cemetery authorizes condemnation proceedings by "the public, to the number of five or more persons," when "the public, to the number of five or more persons," and the land-owners cannot agree upon the price to be paid for the land

In this case the petition alleged, and the order for the appointment of commissioners merely stated, that the "public of that neighborhood," and the land-owners could not agree upon said price. *Held* (THOMPSON, J., *dissenting*), that this statement was sufficient in that it was to be taken in connection with the further allegation in said petition, that the petitioners, five in number, were and had long been residents of the neighborhood and interested in the cemetery and its enlargement.

4. ———— : ———— : RIGHT TO INCLUDE PROVISION FOR ROAD. The judgment herein for the condemnation of land for the enlargement of a public cemetery provided for the condemnation of a strip of land for a road from the public highway to the public cemetery, but this provision was not warranted by the statute governing the proceeding. *Held*, that so much of the judgment as authorized this was illegal for the want of jurisdiction.

5. ———— : FAILURE TO PRESCRIBE METES AND BOUNDS OF THE LAND TAKEN. The court did not in its order or judgment, whereby the commissioners were appointed, fix the location of the strip of land to be taken for such road, but the commissioners did so in their report, which was confirmed by the court. *Held*, that if the statute had authorized the condemnation of land for that purpose, the proceeding would, nevertheless, have been illegal, owing to the failure of the court in said order or judgment to fix the metes and bounds of the land to be taken.

*Error to the Phelps Circuit Court.*—HON. C. C. BLAND, Judge.

REVERSED AND REMANDED.

*A. Corse*, for plaintiffs in error.

*Robert Meriwether*, for defendants in error.

THOMPSON, J.—This was an original proceeding in the circuit court of Phelps county, under section 939, of the Revised Statutes of 1889, to enlarge a public burial ground. The petition ( omitting the caption ) was as follows:

"Your petitioners, Benj. Fore, Wm. Fore, W. H. Fore, John Earpe and W. M. Stogsdill respectfully state that the following described real estate, situated on the southeast quarter of the northwest quarter of

section twenty-seven (27), in township thirty-six (36), of range eight (8), west in Phelps county, Missouri, and inclosed within the following metes and bounds, to-wit: Commencing at a point on the west boundary line of the said southeast-northwest quarter, forty-four rods south of the northwest corner thereof, thence east ten (10) rods, thence south nine rods, thence west ten (10) rods, to the said west boundary line of said southeast-northwest quarter, thence north nine rods to the place of beginning, is now owned by user for twenty-nine years, and is now used and has been for a long time past, to-wit, twenty-nine years, by the public of that neighborhood as a public burial ground; that your petitioners are now, and have been for a long time past, residents of the neighborhood, and interested in said burial ground and its enlargement; that it is absolutely necessary for the convenience of the public of that neighborhood that said ground be enlarged. Your petitioners, therefore, pray that the land within the following metes and bounds, to-wit: Beginning at the northeast corner of the old burial ground as herein-before described, running thence east ten rods to the Rolla and Houston road, thence south with said road nine (9) rods, thence west ten (10) rods to the south-east corner of said old burial ground, and thence north to the place of beginning, be condemned, and the title thereto be vested in the public of that neighborhood, for the purpose of an enlargement of said burial ground; and to that end pray the appointment of three disinterested freeholders as commissioners to assess the damages, which the owners of such land may sustain in consequence of the condemnation thereof as aforesaid; that defendants, Mary E. Hoke and G. W. Hoke, in right of the said Mary E., who are wife and husband, are the owners of the land herein sought to be condemned; that the public of that neighborhood and the defendants cannot agree as to the price to be paid for the same."

The land-owners appeared and filed an answer, the terms of which, under the view we take of the case, are immaterial.

The court, after a hearing, rendered the following interlocutory judgment:

"Now at this day, this cause coming on for trial, the parties, plaintiffs and defendants, appear in person and by counsel, and the issues herein being submitted to the court, who, after hearing all the evidence in the cause and being fully advised in the premises, finds that the petitioners and the general public of the neighborhood where such public grounds are situated are owners by user for the period of twenty-nine years as a public burial ground of the following described lands, situated on the southeast quarter of the northwest quarter, section 27, township 36, range 8, west, in Phelps county, Missouri, to-wit: Beginning at a point on the west boundary line of said southeast quarter of the northwest quarter, forty-four rods south of the northwest corner thereof, thence east five (5) rods, thence south nine (9) rods, thence west five (5) rods, thence north nine (9) rods to the place of beginning; that it is absolutely necessary to enlarge the said public burial grounds for the use and necessities of the public as such burial grounds. That the petitioners herein are interested in said public burial ground and its enlargement; that the public and the defendants who are owners of said land cannot agree as to the price to be paid for the same. It is, therefore, ordered and adjudged that the lands within the following metes and bounds be set apart and condemned as an enlargement of said burial grounds, to-wit: Commencing at the northeast corner of the said old burial grounds, as hereinbefore set out, thence east five rods, thence south nine rods, thence west five rods, thence north nine rods to the place of beginning on the said southeast-northwest quarter, section 27, township 36, range 8, west, in Phelps county, Missouri, and also a strip of land

thirty feet wide running from said last above-described land east to the Rolla and Houston road for the purpose of a right of way from said road to said grounds; and it is further adjudged and ordered that T. D. Smith, T. J. Jones and J. G. Hutcheson, three disinterested householder residents of Phelps county, be appointed as commissioners to assess the damages which the defendants may sustain by reason of such condemnation."

Two of the three commissioners thus appointed filed the following report, which was subscribed and sworn to by them: "We, the undersigned commissioners, duly appointed at the August term, 1890, of the circuit court of Phelps county, Missouri, in the above-entitled cause, as commissioners to assess the damages which may be sustained by the defendants, Mary E. Hoke and her husband, Geo. W. Hoke, by reason of the condemnation and appropriation of the lands as set forth in the finding and judgment of the court in said cause, a copy of which is hereto attached, and being duly sworn upon our oaths do say that we have fully, fairly and impartially viewed the property appropriated and condemned in said proceedings as set forth in said finding and judgment, to-wit: 'Beginning at a point five rods east of a second point on the west boundary line of the southeast quarter of the northwest quarter of section 27 in township 36, of range 8, west, in Phelps county, Missouri, forty-four rods south of the northwest corner of the said southeast quarter of the northwest quarter, thence east five rods, thence south nine rods, thence west five rods, thence north nine rods to the place of beginning, and also a strip of land, thirty feet wide, from said tract east to the Rolla and Houston road, for right of way to and from said burial grounds,' and we do, under our oath as aforesaid, assess such damages at the sum of $15, and we recommend that said right of way of a width of thirty feet be located with its south line on a line east and west with the south line of said

condemned and appropriated tract, it being the best ground for the purpose of right of way.''

The court thereupon entered the following final judgment:

''Whereupon it is adjudged by the court that the land in said report be and the same is hereby condemned, set apart and appropriated, as an enlargement of and right of way to the original burial ground, as set out in plaintiff's petition herein. And it is further adjudged that the petitioners herein pay the costs of this proceeding.

The statute under which this proceeding was instituted reads as follows: ''Whenever it shall become absolutely necessary to enlarge any public burial ground or cemetery, and when the public to the number of five or more persons, interested in the enlargement of said burial ground or cemetery, and the owner or owners of the adjoining land, cannot agree as to the price to be paid for the same, or for any other cause cannot secure a title thereto, the public, to the number of five or more persons, may proceed to condemn the same, in the same manner as provided by law for condemnation, appropriation and valuation, in cases of lands taken for telegraph and railroad purposes; and on such condemnation, and the payment of the appraisement therein provided, the title of such land shall vest in the public for the purposes and uses only for which it was taken.'' R. S. 1889, sec. 939.

The law for condemnation, appropriation and valuation, in cases of land taken for telegraph and railroad purposes, is found in article 6 of chapter 42 of the Revised Statutes, the same being the general chapter relating to corporations.

It is the settled law of this state that statutes giving summary proceedings for the condemnation of private property for public uses are strictly construed; that the steps therein required to be taken are conditions precedent to the right of condemnation, and, hence, must be

strictly pursued ; and that it must appear affirmatively on the face of the proceedings that these steps have been taken, otherwise the judgment of condemnation will be void. *Ells v. Railroad*, 51 Mo. 200 ; *Kansas City, etc., Ry. Co. v. Campbell*, 62 Mo. 585 ; *Cunningham v. Railroad*, 61 Mo. 33 ; *St. Louis v. Gleason*, 89 Mo. 67 ; *Anderson v. Pemberton*, 89 Mo. 61. The failure of the record to show that the steps required by the statute have been taken may be raised for the first time on appeal or error, and without the necessity of filing a motion for new trial or in arrest of judgment. *Kansas City, etc., Ry. Co. v. Campbell*, 62 Mo. 585. And such defects, being jurisdictional in their nature, may be set up for the first time in a collateral proceeding, as in a subsequent action of ejectment. *Ells v. Railroad*, 51 Mo. 200. Nor is there any distinction in the applica-tion of these principles between the case where the sum-mary statutory proceeding is commenced in an inferior court possessing a special or limited jurisdiction, and a case where it is commenced in a superior court of record ; in the latter as well as in the former case, every essential statutory step is necessary to the jurisdiction of the court, and must affirmatively appear on the face of the proceedings. *Ells v. Railroad*, 51 Mo. 200 ; *Kansas, etc., Ry. Co. v. Campbell*, 62 Mo. 585 ; *Johnson v. Beazley*, 65 Mo. 250, 255 ; *Harvey v. Tyler*, 2 Wall. ( U. S.) 328, 342 ; *Galpin v. Page*, 18 Wall. ( U. S.) 350, 371 ; *Pulaski Co. v. Stuart*, 28 Gratt. 872, 879 ; *Werz v. Werz*, 11 Mo. App. 30.

Such being the record before us, and such the law, it is plain that this proceeding is void on its face for several reasons.

I. The statute relating to the condemnation of lands for railroad, telegraph, etc., provides that the commissioners appointed to assess the damages "shall be *freeholders*, resident of the county," etc. R. S. 1889, sec. 2736. In this case the interlocutory judgment

appointing the commissioners described them as "*house-holders*, residents of Phelps county," and it nowhere describes them as freeholders; nor does it anywhere appear on the face of the proceedings that they were freeholders. The word freeholder is generally used to designate the owner of an estate in fee in land. See Anderson's Law Dictionary, verb. "Freeholder." But the word householder means merely, according to Webster, "a master or chief of a family; one who keeps house with his family." Mr. Anderson in his law dictionary, a recent work of great merit, in like manner defines a householder to be "head of a household; a person who has charge of and provides for a family or household." And he adds that the word "implies the idea of a domestic establishment, or the management of a household." And. Law Dict., verb. "Householder." He supports these definitions by the citation of many adjudged cases. It is plain from these definitions that a person may be a householder without being a freeholder, and we must hence conclude that the proceeding is void by reason of the failure of the record to recite that the commissioners appointed were freeholders. That the failure of the record to show that the commissioners or jurors appointed to assess damages in such a proceeding possessed the statutory qualifications will render the proceeding void, is shown by the decision of this court in *State ex rel. v. St. Louis*, 1 Mo. App. 508.

II. The statute (R. S., sec. 939) authorizes this proceeding "when the public, to the number of five or more persons interested in the enlargement of said burial ground or cemetery, cannot agree as to the price to be paid for the same," etc. I am of opinion that the petition in the present case does not comply with this statutory provision. It merely recites "that the public of that neighborhood and the defendants cannot agree as to the price to be paid for the same;" and the interlocutory judgment follows the language of this recital.

It is an attempt to excuse the variance between this recital and the terms of the statute, by the argument that the words, "the public of that neighborhood," are presumed to embrace more than five persons. Such a departure from the terms of the statute would be out of keeping with the rule of strict application already stated. "The public of that neighborhood" may consist of five persons, and it may not. The statute does not say "the public of that neighborhood," but it says "the public, to the number of five or more persons." It is, therefore, absolutely necessary for the petition to state, and for the interlocutory judgment of the court to recite, that the public, to the number of five or more persons, cannot agree with the land-owners as to the price to be paid for the land. That this is a jurisdictional matter is shown by several decisions in analogous cases of proceedings to condemn land. *Kansas City, etc., Co. v. Campbell*, 62 Mo. 585 ; *Graf v. St. Louis*, 8 Mo. App. 562 ; *Chicago, etc., Ry. Co. v. Young*, 96 Mo. 39, 43 ; *In re Gardner*, 41 Mo. App. 596. But, as the petition is brought by five persons, alleging that they are now and have been for a long time past residents of the neighborhood and interested in the burial ground, etc., my associates are of opinion that this statement, together with the statement that the public of that neighborhood are unable to agree, is a sufficient statement of this jurisdictional fact. While I do not agree to this view, I state it as the conclusion of the court.

III. The statute, under which this proceeding was instituted ( R. S., sec. 939 ) does not authorize the condemnation of land for a *road* from the public highway to the public cemetery or burial ground, nor does the petition in the present case ask for the condemnation of such a road. Nevertheless the interlocutory judgment, after authorizing the condemnation of a strip of land along the east side of the cemetery, authorizes a further condemnation of a laterally projecting strip of land, thirty feet wide, running from the cemetery, as thus

enlarged, eastward to the public highway. This part of the judgment was illegal, for the further reason that the circuit court has no original jurisdiction of a proceeding to establish either a public or a private road.

IV. It will be perceived that the interlocutory judgment did not fix the location of this projecting strip of land, condemned for a road to the cemetery. It will also be perceived that the commissioners took it upon themselves to fix its location. The statute, under which the commissioners were appointed and from which they derived their powers ( R. S., sec. 2736 ), limits their powers to the assessment of the damages to be paid the landowner, and nowhere empowers them to assist the court in locating the land to be taken, or any part of it. If so much of the interlocutory judgment as condemned the land for this right of way had been otherwise legal, the proceeding would still have been illegal, for the reason that the judgment itself failed to fix the metes and bounds of the strip of land taken for the road. Nor would this informity be helped out by the fact that the final judgment confirmed the unauthorized assumption of power on the part of the commissioners to fix such metes and bounds.

The judgment of this court is that the judgment be reversed and the cause remanded. It is so ordered. All the judges concur.